Next case we're going to hear is Jacobs Project Management v. United States Department of the Interior, appellate number 22-1147. Jacobs Project Management v. United States Department of the Interior May it please the Court, Julian Poon on behalf of Petitioner Jacobs Project Management Company, I'd like to reserve four minutes for rebuttal. This Court should grant review and vacate the challenged agency head determination with instructions to dismiss for lack of jurisdiction, or at the very least, to substantially reduce the amount of back pay awarded, because we are well beyond any of the conceivable outer time limits prescribed by Congress in the national law. This Court should grant review and vacate the challenged agency head determination with instructions to dismiss for lack of jurisdiction, or at the very least, to substantially reduce the amount of back pay awarded, because we are well beyond any of the conceivable outer time limits prescribed by Congress in the national law. 90 days to act and if you don't act within 390 days under 4712, that's it. That's correct, Your Honor, but what I would submit is that- Yes, this is an easier case because even if the court were to opt for B2, the OIG's deadline, plus C1, which is the 30 days for the agency head, and even if this court were to allow for the additional time that it took the IG to issue her report and then allow 30 days from that under C1 to the agency head, you are still well beyond that. In fact, we're well beyond C2's two-year statute of limitations for the complainant. It sounds like you're making an equitable argument because we need a clear statement from the Supreme Court that a statutory provision clearly states that you lose jurisdiction if a deadline is not met. Isn't that correct? That is correct and we have that in C2, Your Honor. In C2, I've got the text open. Where's the clear statement in the text? Exactly. The statement is that once we are past the 390- Where is it in the language? Where is it? Quote the words. Yes, Your Honor. If the head of an executive agency... issued an order within 210 days after the submission of a complaint or in the case of an extension of time under B2PD not later than 30 days after the expiration of the extension of time, i.e., 390 days... the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint and the complainant may bring a de novo action at law or equity... in the appropriate district court of the United States which shall have jurisdiction. All right. We would submit that that language is comparable to the language in the four naturalization cases construing 8 U.S.C. 1447B. In all those cases, the complainant or the petitioner in those cases filed suit in the district court. That is true, Your Honor, but if we... We don't have to identify the operation of this statute that Judge Bevis asked you to look at. The complainant may bring an action if they want, but they can choose not to. Yes. If they choose not to, jurisdiction rests. Two things, if I may, in response to that, Your Honor. Number one, if we look at the reasoning of those cases, especially Atape from the Fourth Circuit and Aljabri from the Seventh Circuit, let me quote just one of them. Atape explains, quote, when the consequence of a missed deadline is stated explicitly in the statute and that consequence is to give the affected party the option... the option to seek relief in the federal courts. Congress has evidenced an intent to make the deadline jurisdictional. We have Batchelor from the Supreme Court about a year ago. It says even using the word jurisdiction in the same sentence is not enough. Here it's set off by commas, which shall have jurisdiction. Batchelor gave us two examples of statutory cases that were not jurisdictional and both said no court shall have jurisdiction. I don't see any language here that says no court shall have jurisdiction. Well, Your Honor, I would point Your Honor to this Court's decision, I believe, authored by Judge Schwartz five, six years ago in Rubel v. Commissioner. Pre-Batchelor. That's right. And also the statute was totally different in terms of other things that existed in the statutory framework. Yes, but Batchelor specifically cited the tax provision that Your Honor construed in Rubel and agreed that it was still jurisdictional. So Rubel remains good authority. But where the words jurisdiction occur in that case are in a clause that the Supreme Court found not as persuasive as other components of 6015. I don't think we should be talking about Title 26. I think we should be talking about principles of when this statute tells us that there's a mandate that the agency loses jurisdiction. And don't you have sort of a counterintuitive problem? This provision allowing Jacobs to sue is meant to protect him from delay. So isn't it counterintuitive to read a provision meant to protect Weber as the reason that the Department of the Interior cannot order a damages award in his favor? Not at all, Your Honor. And that points to how this case is a stronger case than the naturalization cases or the tax statute construed in Rubel. If the Interior doesn't act in time, this provision meant to allow Weber the opportunity to sue means that too bad, so said. Not exactly, Your Honor. I believe the Department is overstating things by saying that Congress was, quote, solely concerned with the interests of the complainant in this case. That's simply not true. But it clearly was meant to protect Weber. Yes, that is a reason, of course. We recognize that. We recognize that in our brief. But here, unlike in the naturalization case, it's not just a bilateral relationship between one person, the naturalization applicant, and the government. In that case, who cares if you don't mind waiting 5, 10, 50 years to become a United States citizen? It's no skin off anyone's back or nose. But in this case, we have a triangular relationship. And if we look at the statutory text itself, both in 4712c1c and 4712c5, we see that Congress was also concerned with being reasonable to the interests of contractors. There's a clear statement that a court shall lack jurisdiction or shall not have jurisdiction. Because you're leaning on shall, but there's a whole long line of Supreme Court cases saying shall is not enough. So what says that if one fails to exhaust and exhaustion requirements ordinarily are not jurisdictional, that, therefore, it will lose or lack jurisdiction? I would point, Your Honor, to Your Honor's decision just earlier this year in Jaluti v. Citigroup, where Your Honor explained there is no need for jurisdictional magic words. That's not what the clear statement requirement connotes. And, actually, in Brock itself, the Supreme Court stated at footnote 9 on page 262, quote, we need not and do not hold that a statutory deadline for agency action can never bar later action unless that consequence is stated explicitly in the statute. And, Your Honor, so held in Rubel, I believe. In that case, it was an inference. The statute never actually said that the IRS would lose jurisdiction. It simply said in a parenthetical that the tax court shall have jurisdiction after a certain period of time. And same thing with the naturalization statutes. I'm sorry to come back to you, Your Honor. That's all right. In Beckler, the magic word jurisdiction was used, and the Supreme Court said that's not enough. Well, that was in a very different context, Your Honor. I think it was. So, for example, what about Brock v. Pierce? We can stay in this context, an evaluation of an agency head's failure to act, not jurisdictional. Brock is a very compelling case for us, Your Honor, because in Brock, the case that the Supreme Court specifically said that the statute, quote, does not specify any consequences of a failure to meet that deadline. We satisfy that deadline in spades. And we have a clear consequence, an automatic consequence of the sort that the government asked for. And the automatic consequence, to make sure we are talking about the only consequence, is the choice by the complainant to file suit in federal district court. I wouldn't phrase it precisely like that. I would say that it is the automatic exhaustion of administrative remedies, that that in and of itself is sufficient to constitute the kind of consequence, just like in Aljabri, if I may. In Aljabri and in Tape, the Seventh and Fourth Circuits weren't saying that the right or the option to invoke the jurisdiction of the federal district court had to be invoked. It was merely the consequence, the authorizing of the naturalization applicant to. Even if that's a question for you. Sorry, Your Honor. We've spent almost all our time on jurisdiction, but I do want to ask about the back pay award. Yes, Your Honor. We've been thinking about this in the briefs and discussed it in terms of waiver and forfeiture, but should we instead see this as like a default judgment where you didn't plead anything and effectively a judgment against you? Is that right? And if so, does it follow that you basically don't have any justification for your default to vacate the default? I'm not sure, Your Honor, and I don't believe the government has suggested that this is in the nature of a default judgment. They haven't suggested it. The court is suggesting it. And the court is soliciting your views. It will solicit Mr. Himmelfarb's views. And I wouldn't be surprised if Mr. Himmelfarb pops up and instantly agrees with Your Honor that that might be the right way to analyze it. I would submit that the better analysis is set forth in this Court's precedents in Bagot and in Barefoot Architects that we cited, where we have it's a pure question of law whether an agency's authority to award back pay under 4712 should extend no further than what it could have been had the agency complied with 4712's deadlines. And we've been saying from the get-go that those deadlines are mandatory. They're prescribed by Congress. They have to be complied with with real consequences. And here it requires no additional fact-finding. It's closely related to, and it follows from, Jacobs's no-jurisdiction argument. Can I just pick up on one aspect? I have one more question, and then I'll have you ahead of seat. Go ahead. Certainly, Your Honor. And I hope I can reserve my time for rebuttal. That's fine. You did already. Okay. Very good. Thank you, Your Honor. When you were asked to participate in the Interior Department's process, twice you declined, and that's on Appendix 1038 and 1049. Yes, Your Honor. Why did you do so? I mean, it seemed you would come in and say, just so we're not waiving the jurisdictional argument, here's what we have. But when you twice declined to comment or give evidence on the merits, aren't you saying, in effect, I'm waiving? No, Your Honor. I don't believe that would constitute a knowing and volunteering. What was the reasoning for not participating at all? Respectfully, Your Honor, we thought then, as we do now, that the agency was without jurisdiction to act. I got it. But wouldn't you come in with a caveat that assuming, as long as it's preserved, that we don't believe there's jurisdiction, here's my response. It sounds like you're going for a home run or a strikeout. Well, Your Honor, I would settle for a double or a triple, if the Court pleases. But my son is a baseball player. I am not. So I can't speak to the precise metaphor I should be using. But I believe I'm asking for a double, at least. All right. I'll get you on rebuttal. Thank you, Your Honors. May it please the Court, Edward Himelfarb of the Department of Justice representing the Department of the Interior. We've already talked a little bit. The Court has talked about the case law, about how, you know, shall alone is not enough. And you need a clear statement of that the agency's authority to act is cut off. Just a practical question. Go ahead. I found it puzzling that your brief didn't rely on the clear statement rule, that you invoke Brock. But do you see a conflict between the Brock line of cases and the clear statement rule? And how should we think about how they fit together? A conflict? I'm sorry. I'm not sure. The Supreme Court first developed the Brock line of cases. And then it has this clear statement line of cases. And yet, you know, it's never explained how those two fit together. So how should we understand, you know, Brock doesn't phrase it as a clear statement rule. And then there are other cases that phrase it as a clear statement rule. I think that, well, you don't have to call it a clear statement. It has to be some statement at all. Because what you have in this case is what Jacobs is relying on here is an exhaustion of remedies provision. And, by the way, I think it's important to note that their position has nothing to do with the long delay, the unfortunate delay in this case. Their position would be that on day 211, if the inspector general files the report in 180 days and the agency had issued a decision on the 31st day, one day late, for them, that means the agency lacked the authority to act at that point. So I think, you know, we can, as I said, the delay here was unfortunate, but it's really not the issue. Do you have any idea what caused the six-year delay? I'm sorry? Do you have any idea what caused the six-year delay here? What caused it? No, we looked into that, Your Honor. We were, unfortunately, unable to pin down exactly what the cause was. We suspect it had something to do with there was some restructuring going on within the Department of Interior at the time. And, unfortunately, I think this got waylaid. At some point, is there never-ending jurisdiction? I mean, could they come back at this 10 years later? I mean, isn't there? Well, Your Honor, the first thing is we don't really think of it as a jurisdiction of the agency. We think of it as the authority, the statutory authority of the agency to act. But that's just quibbling, I suppose. The answer to your question, I think, is that at some point, when the Court of takes 10 years, there are going to be problems defending that because of the delay. And either it's directly because of the delay and somehow that makes it arbitrary and capricious, or it's that the witnesses who were interviewed were interviewed too late. So it's almost like you're saying it would be like a latches-type problem that would arise? Is that what you're saying? I'm not sure it was a latches problem. I would call it more of a problem of the ability of the other side, the contractor, to interview the same witnesses that the agency is interested in, has interviewed. I mean, the Inspector General usually works on this right away, so that's not a problem. But if we read the provisions as not being jurisdictional, apropos to what Judge Amber was asking you, it appears like the agency has perpetual jurisdiction. And you're saying that wouldn't be the case because a court of appeals would conclude that there's been some lengthy period of time that would be prejudicial to the party against whom it's defined as? That's right. That's right. That's a possibility, Your Honor. I don't think it applies in this case, but, yes, that's a possibility. The question we're both asking, is there at some point in time where the weight is just simply unreasonable? That may be the case, but as we mentioned in our brief and as the Supreme Court in Brockton Pierce County says in its footnote 7, if the – in that case it was called prime sponsor, but it's like the contractor here. If the contractor feels that the agency is taking too long, its remedy, if it has one, is to go and bring an APA action in district court claiming that there was the agency unreasonably delayed. And what the court – what footnote 7 also says is that that depends – the standing of the company is going to depend on whether the statute was intended to protect it as well as the – in this case, the whistleblower. And we don't think that's the case, but they would have – they do think it's the case, so they would go to district court and make the argument. So if he had gone to district court after the necessary time had passed, would you have lost jurisdiction? I just want to be clear. We're talking now about the contractor going to district court? No, we're talking about Weber. If Weber had sued under 4712, if he had ultimately sued in district court after the necessary time had passed, would – Would that have – Would you have lost jurisdiction? Well, I wish I could give you a firm answer to that, the answers that might cause the agency to lack its authority. Why are you hesitant on that if you look at analogous clauses that if a complainant opts for district court authority, the case law says that the agency doesn't have the authority to act? So I'm wondering what's causing you to pause. Is it something in the text? Is it a case law? What's causing you to pause? I beg your pardon, what was the last – What's causing you to pause and not be sure?  Mr. Weber did not sue. So the closest thing we have is the analogy to the 1447B cases that Mr. Poonen was discussing. So if we look at those by analogy, would you agree with Judge Ambrose, kind of the thrust of his question, that is if Mr. Weber filed suit, the agency would have lost jurisdiction? Well, Your Honor, I – By analogy? I hate to say this, but the answer is it might cause the agency to lose its authority to act, but we can't say for sure. And the statute there was very different from this one. One very important thing in the statute in those 1447 cases was the statute said that the district court had jurisdiction and could decide the matter or it can remand the case to the agency. And the existence of the word remand means that the body that it's remanding to did not have jurisdiction. So I think that's a different case. Now, it might – it's possible that – again, it's possible that filing suit, what was a blower filing suit, would cause the agency to lack authority after that. I can't say no to that, but I can also – our position is that it might be, but it's not that it is. Well, you rely in your – in part in response to your adversary's position that they were in a bad spot by the delay, and you argue that they could invoke the APA. That's what you just said. But doesn't that depend on who's in the zone of interest? Yes. And your contention is only the complainants are in the zone of interest. That's right. That's right, Your Honor. Let me just clarify that. Please do. When we say that they have a remedy, we're not saying they have a successful remedy, but they would be able to argue before the district court in that case that the statute was intended to protect them as well. And that's – again, that's from Brock's footnote 7, that they can make the argument that the statute was intended to protect them as well as the whistleblower. And if they're right about that, they can pursue their claim. If we're right, then they can't pursue their claim. And the last statement in footnote 7 of Brock is that if the statute is not intended to protect the – in that case, the prime sponsor, they don't have any remedy at all. But even – then they have no remedy, so they can have the cloud of this investigation hang over them for as long as the agency decides to not act. Well – Does that seem what the goal of this statute is, which is, if we assume it is non-jurisdictional, the type of deadlines that spur action? It's Barnard. Yeah. That's a spurring action. That's the language, I believe, from Brock, from the Brock decision. It's intended – the deadlines are intended to spur action by the agency. So what avenue would a contractor have, if there's been a complaint against it, to spur action, unless – absent being able to invoke Section 706 of the APA? Well, it certainly can complain to the agency and say, look, we're – you know, we gave you our opinion on the various issues that they're raising. We didn't, you know, pull what Jacobs did in this case and say we're not participating. We participated, and this is our position, and we can – you can't keep delaying this because – I mean, just – this is what the company would do. It's not a court remedy. It's an administrative remedy in the sense of just going to the agency and saying, look, you're taking way too long. The statute says this. You're way too long, and we want you to decide this case so we can invoke our rights to go to the Court of Appeals under C-5 if you decide against this. I would like to ask a little bit about how – should we see this as forfeiture? Should we see this as waiver? A couple questions. The first one is, you know, under Sims v. Epfel and Carr v. Saul, we apply forfeiture rules only to adversarial agency proceedings. So how would you – how should we understand the nature of the proceeding below? Well, I mean, I guess it's sort of a – you know, it's not a formal trial-type proceeding. It's a proceeding in which the agency gets a report from the inspector general and then asks the contractor who's suspected of engaging in reprisal against the whistleblower for his position, which is what happened here. What can you tell us? What's your defense about this? What was wrong with the inspector general's investigation and so on? And so it's that kind of – it's an informal adversarial proceeding. And so if they – if the agency says to the company, we'd like to hear what you have to say about this, and the company says you don't have any authority to act and go away, instead of saying you don't have any authority to act. Alternatively, if you disagree with us, here's our defense of the company's actions in this case, then the company has forfeited. I think it's a forfeiture. State the forfeiture, not a waiver, because there is a difference. Well, you know – Waivers are intentional. Forfeitures are you just let it go by, and you don't necessarily – Well, yeah, waiver is like you're saying we don't take this – we don't – But since this is not a really well-defined process, does it even fit in that mold? I mean, it seems like it might be a default or something like that. Well, Your Honor, you know, if you say it's a default, I'm not sure we would object to that. The problem is – It's an exhaustion problem. I mean, we could look at it – this is an agency review. They didn't raise it with the agency. It's un-exhausting. Is it an exhaustion problem? I don't know if that really fits. You mean for the company to go under C-5 for the Court of Appeals? Is that what you're saying? What I'm saying is that I think what we're talking about right now is the alternative argument your adversary has made concerning the back pay award. And we all know from the record there was no presentation of a challenge to the back pay award or even quote-unquote wrongdoing to the agency's decision. We all know that. And so I think the questions that we're probing about have to do with what do we treat this as? Is it a forfeiture? Is it a default by phrasing to raise it? Is it a waiver because it was intentional? There was a decision to only challenge jurisdiction. Is it because it's an agency matter? Is it an exhaustion problem? Although I don't know if that fits either. So we're wondering what is the legal doctrine that prohibits your adversary from asking us today to look at the back pay award? Well, I think you would have to call it either a waiver or forfeiture. And, you know, they deliberately decided not to participate in the agency process. They offered the opportunity twice. We don't even know for sure that they didn't get the OIG report in the exhibits. They say they didn't, so they were sent and they offered an opportunity to participate. They did not. They turned that down instead of doing what I was saying before, which is arguing in the alternative. There's nothing that keeps them from making their arguments that the agency lacks authority to act in this case. That's perfectly legitimate. It's wrong, but it's perfectly legitimate for them to raise that. But alternatively, they should make any arguments about the merits. And here, in this case, they say if you decide against us, you should limit any back pay award to the relevant period. They didn't say that. I'm not sure why, but they didn't say that. It's clear they didn't say that, and I don't think they would claim they have said that. All right. Thanks. And just to sum up, we think that the statute, the entire statute is designed for the benefit of the whistleblower, including the exhaustion provision, which Jacobs is relying on here. And the petition for review should be denied. Thank you very much, Erin. Thank you. You can take your time. We're not going to start the clock before you get here. It's all good. Thank you, Your Honor. Your Honor, four points, if I may, in rebuttal. On the Beshler point that we discussed, the Beshler is not on point. I have now had a chance to look at the statute construed by Justice Barrett in that case. There, no consequence was prescribed whatsoever. It's read, 6330D1 read, quote, the person may, may within 30 days of a determination under this section, petition the tax court for a review of such a determination, and the tax court shall have jurisdiction with respect to such a matter. End quote. I've searched the opinion. Where does C-2 prescribe a consequence? The automatic exhaustion of administrative remedies. The options. You can do this, and then you can do that. It doesn't say you may not or shall not or no later than. If you delay, Weber can do X. He can file. Weber can do X, and what end is there, as Your Honor pointed out, and as Judge Schwartz pointed out as well, perpetual jurisdiction until kingdom come. Fifty years from now, someone's rooting through the agency's files and says, you know, this cloud has been hanging over an honest federal contractor for God knows how many decades, and it shouldn't turn simply on the happenstance of whether a complainant sues or not. Here we have. But if you're in Mr. Weber's position, you're saying, what, he should have filed a suit and that's it? Yes. He forfeited the right. Yes. Yes, he did. Congress prescribed a precise mechanism, 13 months for the agency to act, and then from that point on, two years, two years for the complainant to sue in district court, which he did not. And so, therefore, that is why this is an easier case. We're so far beyond the outer time limit. And I would also just suggest, I don't want to take up too much time on Batchelor, but we would suggest that Brock is the relevant line of authority. Brock and his progeny said it as recently as Nielsen v. by the government in 2019, an opinion for the court by Justice Alito, that Brock remains very much alive, and it is the most on point and controlling line of authority because Batchelor is not involved. We can very easily read Brock and the Batchelor line in context where, you know, we need a reason, and that reason is a clear statement, you know. So even though it didn't phrase it in clear statements in terms of Brock, we shouldn't read their two lines of precedent as at war. I'm not suggesting that we can't, but the lowest of remains has a consequence been prescribed. There is a consequence. What in this statute says what happens if you don't? Then you automatically exhaust administrative remedies, and the right or option to invoke the jurisdiction of the district court vests. That is sufficient under the naturalization statutes, but I don't want to test Your Honor's patience with that too long. Let me turn to two or three other points. Answer Brock for one second. The court itself says we would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. I mean, they're laying a ground rule, if you will, for how to approach these types of cases. I believe that's a separate part of the court's opinion, Your Honor, where they're talking about the public rights, private rights inquiry, which here we don't have here. I think Judge Amber's point is it's a factor for consideration. It is a factor, but it's a factor that cuts in our favor because this case is like Mahasco is construed in Brock, an important statute, the NDA, just like the Civil Rights Act in Mahasco, but it was a private right of action there as it is here for the complainant to recover. I would also say on the default judgment that Judge Bevis asked about, we would suggest that's the wrong framework to apply here. It can't be because this is an issue of first impression. Nobody has construed the NDA before, so how would we have been on fair notice that we would have waived or failed to exhaust or what have you any remedies by not also arguing on the merits, and it's something the government hasn't asked. I would also just very quickly on the APA remedy, it's not just a zone of interest problem, as Your Honor pointed out. It's an article theory, injury, and fact problem. How would we know? How would we know that we have been aggrieved until the agency finally acted six years later? Are we supposed to have sued the government affirmatively in district court under APA and say, please hurry? We'd ask, Your Honor, for an order to ask the government to hurry up and prosecute us more vigorously and quickly. This is the last thing I wanted to say, and I'll see if my colleagues have any other follow-ups for you. Brock and Southwestern Pennsylvania Growth, written by then-Judge Alito, both identified the APA as a mechanism for an entity who's being subjected to agency action to do something. If they're under scrutiny, they can file under the APA, and I think that's a roadblock. Those are very different cases, though, Your Honor. In Southwestern Pennsylvania Growth Alliance, there was no respondent. There was no investigation. There was no adverse consequences. There was no investigate us more quickly or prosecute us more quickly. It was asking for a benefit. It was asking for a reclassification. Brock was investigating CETA overpayments, so I don't know how you get around that. If I may very quickly, absolutely. It's like table stakes. I'm not a poker player, but the most you could have lost is what the federal government had originally given you in CETA funds or some portion of it. This is very different. Mr. Weber came at us asking for nearly $14 million in damages of our own money, and it's dicta as well. I mean, the footnote 7 in Brock says if, if you fall within the zone of interest. But the government, you can't credit everything the government says because they say out of the other side of their mouth, oh, we don't fall within the zone of interest because it's solely to protect compliance. But we know that can't be right. Once we know that can't be right, then we have a triangular relationship here, and this is a stronger case than the nationalization cases such as Itape, Aljabre, Bustamante, and Hovsepian. We're aware of the cases you've cited. Counsel, thank you very much. Thank you, Your Honors. We thank counsel for both sides for their enthusiastic argument here today and for your briefing, and we take the matter under advisement.